* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments before the Full Commission. Following its review, the Full Commission finds no good grounds to receive further evidence and upon reconsideration of the evidence, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the Industrial Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. Vester Nissan was self-insured at the time of the 1 June 1998 injury, and Brentwood Services was the servicing agent for the Defendant-Employer.
3. On 1 June 1998, Plaintiff was employed by the Defendant-Employer as a parts clerk. She was employed by the Defendant-Employer from 6 April 1998 through 1 June 1998.
4. On or about 1 June 1998, Plaintiff fell down stairs at her work place landing on a concrete floor causing her to experience a back injury.
5. Defendants accepted the claim pursuant to a Form 60 filed 17 September 1998, and paid benefits to the Plaintiff as a result of her 1 June 1998 injury, from 1 June 1998 and on-going. However, an Opinion and Award was entered on 5 April 2004 whereby Deputy Commissioner Gregory stated that Plaintiff unjustifiably refused to participate in vocational rehabilitation in violation of the Commission's Order, and thus, the Deputy stated that Plaintiff was not entitled to indemnity benefits from 20 March 2003 until 24 February 2004, when she was taken out of work following surgery.
6. On 1 June 1998, Plaintiff's average weekly wage was $307.50, yielding a compensation rate of $205.01.
7. Plaintiff underwent a left L4-5 laminectomy performed by Dr. Bruce Jaufmann on 18 September 2000 and L3-4 and L4-5 decompression and fusion surgery performed by Dr. James Rice on 24 February 2004.
8. In addition, the parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1A: I.C. Forms, correspondence, medical records, payroll history deposition transcripts.
 b. Stipulated Exhibit #1B: I.C. Forms, correspondence, medical records, payroll history deposition transcripts. *Page 3 
 c. Subsequent to the hearing, the parties submitted additional medical records that are hereby admitted into the record as Stipulated Exhibits #2 and 3; and
 d. Certain medical records, payroll history, deposition transcripts and all Industrial Commission forms filed in this matter.
 * * * * * * * * * * *
Based upon all the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the hearing before the Deputy Commissioner, Plaintiff was 44 years old. She has completed high school and two years of college. Plaintiff was employed by Defendant-Employer as a parts clerk from 6 April 1998 through 1 June 1998.
2. On 1 June 1998, Plaintiff sustained an admittedly compensable injury when she fell down steps at her work place injuring her back. Since that time, Plaintiff has been receiving temporary total disability benefits in the amount of $205.01 per week.
3. In February 1989, Plaintiff began seeing psychiatrist, Dr. Neil Mitchell. During her treatment in 1989 and 1990, Plaintiff discussed her combative relationship with her ex-husband and custody issues related to her son. Plaintiff reported she was the victim of a physically and verbally abusive husband. Dr. Mitchell opined that Plaintiff suffers from a chronic, ugly, lasting depression, which, despite years of treatment, never got better.
4. In 1993, Plaintiff was still having panic attacks, feeling helpless, and having custody issues regarding her son. Additionally, she was having gynecological problems, and Dr. Mitchell prescribed her Prozac. Plaintiff was hospitalized on 21 April 1994, with symptoms that *Page 4 
included depression, decreased sleep and appetite, feelings of hopelessness, helplessness, anhedonia, and an increase in crying spells all of which have worsened over the last few months. Dr. Michele Denker wanted to rule out a major depressive episode versus adjustment disorder with depressed mood and admitted Plaintiff to the hospital. Plaintiff remained in the hospital five days and was discharged 26 April 1994. At the time of discharge, Plaintiff was diagnosed with an adjustment disorder with a depressed mood, chronic pain syndrome and prescribed anti-depression medication, including Xanax, Prozac and Desyrel.
5. In 1995, Plaintiff continued to be depressed and suffered from crying spells and poor sleep patterns. In her treatment with Dr. Mitchell, she focused on the alleged complications resulting from her surgery and on her abusive relationship with her father. Throughout her treatment with Dr. Mitchell in 1996 and 1997, she continued to be very depressed and was on medications for this depression, including Prozac, Valium, Tranxene and Xanax. In October 1996, Plaintiff's depression had gotten so bad that Dr. Mitchell noted that Plaintiff "did not care about anything, and does not even want to be around her own son."
6. Dr. Mitchell continued to treat Plaintiff until 1999. At that time, he opined that the factors causing her depression consisted of her dysthymia of childhood and a bipolar disorder that he opined was genetic and influenced by Plaintiff's environment, which included her abusive husbands, father, physical infirmities and social difficulties. Dr. Mitchell opined that he did not see any improvement during his treatment of Plaintiff and did not expect much change over her lifetime, especially if her stressors did not improve.
7. Dr. Mitchell opined that Plaintiff's work-related injury requiring two additional surgeries and resulting chronic pain would "have enormous impact" on Plaintiff's depression. Absent "very, very vigorous training and development," he opined that Plaintiff would have "no *Page 5 
reason not to be depressed until she dies." He further opined that Plaintiff would need treatment for the remainder of her life just "for maintenance."
8. Following her injury by accident, Plaintiff was treated initially by Dr. Bruce Jaufmann, then later by Dr. James Rice. On 18 September 2000, Plaintiff underwent a left L4-5 laminectomy performed by Dr. Jaufmann, and on 24 February 2004, Plaintiff underwent a L3-4 and L4-5 decompression and fusion surgery performed by Dr. Rice. According to both Dr. Rice and Dr. Jaufmann, plaintiff's back condition at L3-L4 is not causally related to her compensable injury by accident.
9. Plaintiff had been treating with Dr. Rice since her fusion surgery in February 2004, and on 20 January 2006, Dr. Rice stated that Plaintiff was at maximum medical improvement and gave Plaintiff a 30% permanent partial disability rating to her back. Dr. Rice provided work restrictions pursuant to a Functional Capacity Evaluation (FCE) that included light duty work restrictions with no lifting more than five pounds and limited bending, stooping, standing and walking. He recommended that Plaintiff begin working for two hours per day for four weeks, then increase her duties to four hours per day.
10. At the hearing before the Deputy Commissioner, Plaintiff testified that she has constant problems with severe back pain. She also experiences pain down both her legs and occasional numbness. Plaintiff is taking Cymbalta, Kadian, Percocet, Lorcet, Zanax, Lyrica, Soma and Aztec, all of which are prescribed by Dr. Rice.
11. Dr. Rice opined that the chronic pain suffered by Plaintiff following her spinal fusion surgeries aggravated Plaintiff's pre-existing depression. Further, while Dr. Rice opined that Plaintiff might benefit from vocational rehabilitation, he limited her participation to jobs that fell within the limitations he had imposed. *Page 6 
12. An Opinion and Award was entered on 5 April 2004, whereby former Deputy Commissioner Nancy Gregory ruled that Plaintiff unjustifiably refused to participate in vocational rehabilitation in violation of the Commission's Order. Accordingly, Deputy Commissioner Gregory ruled that Plaintiff was not entitled to indemnity benefits from 20 March 2003 until 4 February 2004, when she was taken out of work following surgery.
13. Plaintiff began seeing psychologist, Dr. Thomas Harbin, on 29 March 2005. On the intake form she filled out prior to her first appointment, Plaintiff neglected to inform Dr. Harbin of her extensive prior psychiatric treatment, her mother's past psychiatric treatment, her abusive past relationships and her legal troubles; however, when apprised of Plaintiff's medical past, Dr. Harbin did not change his opinions regarding Plaintiff's current mental status or her ability to return to work. Dr. Harbin continues to treat Plaintiff. In a letter dated 8 February 2007, he recommended that she needed continuing treatment for depression and chronic pain, including medication and psychiatric therapy.
14. Dr. Harbin opined that absent Plaintiff's chronic pain, she would not be as severely depressed as she currently is. He disagreed with assigning a percentage of permanent partial disability to Plaintiff's mental health, but opined that it was greater than 5%. He further opined that Plaintiff's current condition renders her unable "to be a reliable and effective employee even in a sedentary job."
15. A medical records review and an IME of Plaintiff were performed by Dr. C. Thomas Gualtieri. Based upon the tests administered by Dr. Gualtieri, he opined that Plaintiff is at maximum medical improvement and her depression has histrionic features, which one would not find with a patient who is suffering from depression from chronic pain. He further opined that Plaintiff has no persistent psychiatric or neuropsychiatric disability that was caused by the *Page 7 
accident of 1 June 1998, and she needs no further treatment. Dr. Gualtieri maintains that Plaintiff would feel much better if she was more independent and a more productive citizen and that her inability to work has nothing to do with her 1 June 1998 injury and/or any psychiatric condition as a result of that accident.
16. Given that Dr. Gualtieri saw Plaintiff only once as opposed to the prolonged treatment provided by Drs. Rice, Harbin and Mitchell, the Full Commission gives greater weight to the opinions of Drs. Rice, Harbin and Mitchell.
17. A mediation was scheduled in this case on February 2006. The mediation was cancelled at the request of Plaintiff, and a cancellation fee was charged by the mediator in the amount of $195.00.
18. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment on 1 June 1998. As a result, Plaintiff has developed chronic back pain and an aggravation of her pre-existing depression. Both conditions have combined to limit Plaintiff's ability to return to work.
19. On 1 June 1998, Plaintiff's average weekly wage was $307.50, yielding a compensation rate of 205.01.
20. This matter was appealed to the Full Commission by defendants from a Deputy Commissioner's Opinion and Award awarding benefits and results in the affirmation of that award.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 8 
1. Plaintiff sustained a compensable injury by accident arising out of and in the scope of her employment on 1 June 1998, when she fell down a flight of stairs at work. Plaintiff has remained out of work pursuant to physical and emotional restrictions. Defendants have continued to pay temporary total disability benefits. N.C. Gen. Stat. § 97-2(6).
2. As a result of Plaintiff's compensable injury on 1 June 1998, and the chronic pain and resulting exacerbation of her depression, Plaintiff is entitled to temporary total disability compensation at a compensation rate of $205.01 until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. As a result of Plaintiff's compensable injury on 1 June 1998, Plaintiff is entitled to have Defendants provide all reasonable medical treatment related to her back injury, chronic pain and aggravated pre-existing depression including, but not limited to, pain management and long term psychiatric/psychological treatment recommended by Dr. Rice and Dr. Harbin to the extent that said treatment tends to effect a cure, give relief or lessen her disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. The medical evidence tends to show that Plaintiff may benefit from vocational rehabilitation. If commenced, it shall be conducted within the job restrictions set by Dr. Rice. Plaintiff's ability to participate shall be subject to the ongoing assessment of her treating physicians and psychologist. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Defendants are entitled to credits as follows: the amount of $10,015.71 for the overpayment pursuant to the April 2004 Opinion and Award; a reimbursement for the $2,984.52 they paid for the unrelated L3-4 surgery; and a reimbursement for the $195.00 cancellation fee they paid the mediator. As previously ordered by the Deputy Commissioner, these amounts shall *Page 9 
be deducted by shortening the period during which compensation must be paid as mandated by N.C. Gen. Stat. § 97-42.
7. Pursuant to N.C. Gen. Stat. § 97-88, the Full Commission has discretion to award reasonable attorney's fees for appeals brought by the insurer when the Commission orders the insurer to make or continue payments of compensation to the injured employee.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall continue to pay temporary total disability compensation to Plaintiff at the rate of $205.01 per week until further Order of the Commission.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of plaintiff's injuries by accident on 1 June 1998, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. This treatment includes, but is not limited to, all reasonable medical treatment related to her back injury, chronic pain and aggravated pre-existing depression including, pain management and long-term psychiatric/psychological treatment recommended by Dr. Rice and Dr. Harbin. In addition, it may also include rehabilitation conducted within the job restrictions set by Dr. Rice. Plaintiff's ability to participate shall be subject to the ongoing assessment of her treating physicians and psychologist.
3. Defendants are entitled to credits as follows: the amount of $10,015.71 for the overpayment pursuant to the April 2004 Opinion and Award; a reimbursement for the $2,984.52 *Page 11 
they paid for the unrelated L3-4 surgery; and a reimbursement for the $195.00 cancellation fee they paid the mediator. These amounts shall be deducted by shortening the period during which compensation must be paid.
6. Plaintiff's former counsel was awarded a reasonable attorney's fee in the amount of every fourth check paid to Plaintiff during her continuing receipt of benefits under the Act. The Commission concludes that the payment Plaintiff's former counsel has already received constitutes a reasonable attorney's fee in this case, and that her continuing entitlement to fees is superseded by the entitlement of Plaintiff's current counsel. Therefore, a reasonable attorney's fee of 25% of the compensation awarded to Plaintiff in Paragraph 1 above is hereby approved to be deducted from sums due Plaintiff and paid directly to Plaintiff's current counsel, beginning on the date of this Opinion and Award.
7. Plaintiff is entitled to a reasonable attorney's fee assessed against defendants pursuant to N.C. Gen. Stat. § 97-88. Plaintiff's counsel has submitted an affidavit to the Commission showing the hours spent on the appeal to the Full Commission. The Full Commission finds the amount to be reasonable and accordingly, Defendants shall pay to Plaintiffs' counsel an attorney's fee in the amount of $2,562.24. Such fee shall be taxed as costs to Defendants and shall not be deducted from any other sums due Plaintiff or Plaintiff's counsel.
8. Defendants shall pay the costs due the Commission.
This the ___ day of February 2008.
S/_____________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/______________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ DANNY L. McDONALD COMMISSIONER *Page 1